BISHOP v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1919.)

No. 3279.

1. INTOXICATING LIQUORS &—229—TRANSPORTATION INTO PROHIBITION STATE —EVIDENCE.

Testimony that the owner of whisky was expected, by those taking it by boat from Missouri down the Mississippi, to meet them at one of two points in Tennessee, with two trucks on which to unload it, was evidence that it was intended for transportation into Tennessee, for permanent stay there, in violation of Act March 3, 1917, § 5 (Comp. St. 1918, § 8739a).

2. CRIMINAL LAW &—418(2)—EVIDENCE—UNCONTRADICTED STATEMENT IN DEFENDANT'S PRESENCE.

Statement of helper, in presence of owner of boat, and not questioned by him, when officers came on board and asked the destination of whisky thereon, that they expected the owner of the whisky to meet them at one of two points in Tennessee with two trucks on which to unload it, is admissible against the boat owner, prosecuted for transporting the whisky into Tennessee in violation of Act March 3, 1917, § 5 (Comp. St. 1918, § 8739a).

3. STATES &—12(2)—BOUNDARY—NAVIGABLE STREAM.

Relative to transporting whisky into Tennessee from Missouri, in violation of Act March 3, 1917, § 5 (Comp. St. 1918, § 8739a), in the absence of evidence of avulsion, the middle of the navigable channel of the Mississippi as it then existed is to be taken as the state line.

4. CRIMINAL LAW &—862—INFERENCES BY JURY—COMMON KNOWLEDGE AS BASIS.

Merely from the common knowledge regarding the nature of the Mississippi and its winding channel, the jury would be entitled to infer that a considerable part of the journey down it, for over 100 miles constantly opposite Tennessee, of defendant's light draft small power boat, the natural effort of which would be to make as straight a course as possible, had been within the limits of Tennessee.

---

&—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INTOXICATING LIQUORS ⊶236(1)—TRANSPORTATION INTO PROHIBITION STATE—EVIDENCE.

Evidence *held* to support conclusion that defendant had actually transported liquor across the state line in the Mississippi into Tennessee, and with intent that it should finally remain there.

6. INTOXICATING LIQUORS ⊶138—TRANSPORTATION INTO PROHIBITION STATE.

Relative to transporting liquor into a prohibition state in violation of Act March 3, 1917, § 5 (Comp. St. 1918, § 8739a), defendant having actually transported whisky in his boat across the state line in Mississippi into Tennessee, and with intent that it should finally remain in that state, it was immaterial that he had incidentally gone out again with his boat and cargo, or that he was outside it when arrested.

7. INTOXICATING LIQUORS ⊶223(2)—VARIANCE—PLACE.

Variance between indictment for transporting liquor into a prohibition state, charging transportation to a certain point therein, and proof that defendant's journey ended two or three miles short of that point, he being arrested on his journey, was immaterial.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Tom Bishop was convicted of transporting liquor into a prohibition state, and brings error. Affirmed.

A. B. Galloway, of Memphis, Tenn., for plaintiff in error.

Wm. D. Kyser, U. S. Atty., of Memphis, Tenn.

Before KNAPPEN and DENISON, Circuit Judges, and HOLLISTER, District Judge.

DENISON, Circuit Judge. [1, 2] Bishop was convicted of bringing intoxicating liquor from Missouri into Tennessee. Act March 3, 1917, c. 162, § 5, 39 Stat. 1069 (Comp. St. 1918, § 8739a). He was the owner of a tramp gasoline launch plying upon the Mississippi river. At Caruthersville, Mo., he took on a load of whisky and started down stream. There are, on the Tennessee shore 20 or 30 miles above Memphis, two landings, Richardson's and Pleasant View; the latter is 5 or 6 miles below the former. Tennessee officers, stationed upon the river bank about halfway between these two landings, observed Bishop's boat passing. They put out in their boat, discovered the character of his cargo, and brought him and his boat to the shore. He was asked by the officers the destination of the whisky; he said he did not know, and that his helper had the bills of lading. This helper thereupon produced some kind of bills of lading, which gave the name of the consignee and the place of the destination as Lake Providence, La. Each one of the cases was marked with the same consignee and destination. The sufficiency of the evidence, in order to make a case for submission to the jury and upon the theory that the state of Tennessee was, in truth, the final intended destination, depends upon statements made by this helper to the officers in the presence of Bishop, and not denied by him. Bishop had said that they were intending to land at Pleasant View to pick up the owner of the whisky. The helper said that they expected the owner of the whisky to meet them either at Richardson's or Pleasant View with two trucks upon which to unload the whisky; that they had prepared to land at Richardson's, if

⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

they had received a signal, but, receiving no signal, were going on to Pleasant View. If the owner was to meet them and unload the liquor onto trucks, the inference that it was intended for transportation to Memphis would be practically inevitable; and this testimony of the helper was plainly substantial evidence which, when Bishop failed to question its accuracy, tended to show his participation in transporting into Tennessee for permanent stay in that state; and the claim that there was no evidence to support the verdict is not sustainable, unless for the reason now to be stated.

[3-6] The record is very vague and unsatisfactory as to whether Bishop and his boat had crossed the line into Tennessee before the officers took charge. This question, apparently, was not brought to the attention of the court below in any clear way, if at all; what was said upon the trial seemed to indicate only that respondent depended upon the lack of any landing in Tennessee; and the briefs and arguments in this court indicated that attention had not been given to the question as to the precise location of the state line in the river. However, since it does not appear that Bishop had anything to do with purchasing or ordering the liquor, the conviction cannot be sustained, unless the record fairly indicates that he had crossed the state line while he was still acting voluntarily.

There is nothing to indicate that, at this point in the river, there had been any avulsion such as considered in Arkansas v. Tennessee, 246 U. S. 158, 173, 38 Sup. Ct. 301, 62 L. Ed. 638, L. R. A. 1918D, 258, and it therefore is to be taken as settled that the state line at this point between Missouri and Tennessee, when this boat was seized, was the middle of the navigable channel as it existed at that time. Arkansas v. Tennessee, supra, and cases cited 246 U. S. pp. 169–172, 38 Sup. Ct. 301, 62 L. Ed. 638, L. R. A. 1918D, 258.

The testimony is that the boat was "in midstream." There is also testimony that, at one time, the boat was closely hugging the Tennessee shore; but this seems to refer to a time after the arrest, when the officers were bringing the boat ashore. In view of this fact, and the further statement that the navigable channel was here near the Tennessee shore, this statement about "hugging the shore" is an unsatisfactory basis for any definite conclusion. However, the boat had traveled down the river, constantly opposite Tennessee, for 100 miles or more, and it would be very strange if it had not repeatedly crossed over the center of the navigable channel and entered upon Tennessee territory. The natural effort of this light draft small boat would have been to make as straight a course as possible, and this would have taken it east of the center every time the channel made a bend to the west. We think that the jury would be clearly entitled to infer, merely from the fact of this journey and the common knowledge regarding the nature of the river and its winding channel, that a considerable part of the journey had been made within the limits of Tennessee. When to this we add the fact that they intended to land at Richardson's, if they were signaled, and would naturally have drawn in close to that landing, and the further fact that no denial that this had occurred, nor any claim that Bishop had constantly kept his boat in Ar-

kansas, seems to have been made at the trial, we think there is no doubt that the evidence in the case, coupled with matters of judicial and common knowledge, fairly supports the conclusion that Bishop had actually transported the liquor across the state line into Tennessee and with the intent that it should finally remain in that state. If this is true, the fact that he had incidentally gone out again with his boat, or even was outside the state at the moment of his arrest, would not be material. Jones v. United States (C. C. A. 6, May 6, 1919) 259 Fed. 104, —— C. C. A. ——.

[7] The indictment charged transportation "to Pleasant View." The proof showed that Bishop's journey ended two or three miles short of Pleasant View. We cannot think this a material variance.

The conviction is affirmed.